UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
In re                                                  :
                                                       :   Chapter 11
ADELPHIA COMMUNICATIONS CORP., *et*    :
*al.*,                                                 :   Case No. 02-41729 (REG)
                    Debtors.                           :   (Jointly Administered)
                                                       :
-------------------------------------------------------- x
ADELPHIA COMMUNICATIONS CORP., *et*    :
*al.*,                                                 :
                                                       :
                                                       :
                    Plaintiffs,                        :
                                                       :
           - against -                                 :   Adv. Pro. No. 06-01528
                                                       :
THE AMERICA CHANNEL, LLC, ALIOTO      :
LAW FIRM and GRAY, PLANT, MOOTY,       :
MOOTY & BENNETT, P.A.,                 :
                                                       :
                    Defendants.                        :
-------------------------------------------------------- x


BENCH DECISION ON ISSUANCE OF
TEMPORARY RESTRAINING ORDER
(THE AMERICA CHANNEL)[1]


APPEARANCES:


WILLKIE FARR & GALLAGHER LLP
Counsel for Plaintiff Debtors and Debtors in Possession
787 Seventh Avenue
New York, NY 10019-6099
By:   Brian E. O'Connor, Esq. (argued)
      Michael D. Maimin, Esq.

---

[1] This written decision memorializes (and in the last paragraph clarifies) the decision dictated in open court on Friday, June 2, 2006. It is subject to cite checking and technical corrections.

-1-

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Counsel for Official Committee of Unsecured Creditors
1633 Broadway
New York, NY 10019
By:     Jonathan E. Minsker, Esq. (argued)


BRAGAR WEXLER EAGEL & MORGENSTERN, P.C.
Counsel for Official Committee of Equity Security Holders
885 Third Avenue, Suite 3040
New York, NY 10022
By:     Gregory A. Blue, Esq.

NO APPEARANCE BY DEFENDANTS


BEFORE:     ROBERT E. GERBER
            UNITED STATES BANKRUPTCY JUDGE

In this adversary proceeding under the umbrella of the approximately 230 jointly administered chapter 11 cases of Adelphia Communications Corporation and its subsidiaries (the "Debtors"), I have the Debtors' motion, pursuant to Fed. R. Bankr. P. 7065, and Fed. R. Civ. P. 65(b) (which Rule 7065 incorporates in substantial part), for a TRO enjoining the prosecution of an antitrust action in Minnesota in which the prayers for relief include, as a prominent feature, an injunction restraining the now-pending sale to Time Warner Cable and Comcast of the Debtors' assets in the *in rem* proceedings before me, as authorized to date, and to be further authorized, in this Court.  The defendants are The America Channel ("TAC," a cable channel, assertedly not yet in operation, that is aggrieved by the failure of Time Warner, Comcast and Adelphia to agree to carry it on their cable systems), and TAC's lawyers, who are trying to enjoin the pending sale in Minnesota federal court.

The request for the TRO was made on notice, and my chambers authorized counsel for TAC to appear either in person or by telephone.  They elected not to appear.

For the reasons that follow, I am granting the TRO in the form in which it was requested, though at the time of the hearing on the preliminary injunction, I will wish to hear argument from the Debtor plaintiffs and the defendants (assuming that the defendants are then willing to appear), with respect to whether I can address the very substantial needs and concerns of the Debtors and their creditors by a somewhat narrower injunction, which might permit conduct that would not, like TAC's present conduct, interfere with the property of the estate and the reorganization proceedings before me.

The following are my Findings of Fact, Conclusions of Law and bases for the exercise of my discretion in connection with this determination.

## Findings of Fact

*Notice*

The Debtors provided notice of the hearing on this application (as well as copies of the adversary complaint, order to show cause and motion for temporary restraining order and preliminary injunction, and supporting papers) to TAC and the TAC Attorneys (together, the "Defendants"), among others, by e-mail last evening. In addition, the Debtors provided telephonic notice to the Defendants. The Defendants declined to appear. I find that the notice provided is appropriate under the circumstances, and that the Defendants have not suffered any prejudice with respect to their ability to be heard on this matter. I also find as a fact, or mixed question of fact and law, that this application was taken on notice and not *ex parte. See In re Lang Communications, L.P.,* 2000 Bankr. LEXIS 2021, *5 (Bankr. S.D.N.Y. 2000) (the failure of counsel to attend a hearing as to which it was on notice did not make such a hearing "*ex parte*").

*The Sale to Time Warner and Comcast*

Most of the Debtors in these cases filed for relief under chapter 11 of the Code on June 25, 2002. In April 2004, the Debtors announced their decision to pursue a sale of substantially all of the Debtors' assets and began a court-supervised, multi-phase auction process in which the Debtors were advised by UBS Securities, Allen & Company., and Sullivan & Cromwell. The Debtors considered numerous methods of sale and bids. After careful consideration and significant negotiation, the Debtors entered into definitive sale agreements (the "Purchase Agreements") with Time Warner and Comcast (the "Purchasers"), pursuant to which the Purchasers agreed to purchase substantially all of the Debtors' assets (the "Sale") for approximately $12.6 billion in cash and a 16% interest in Time Warner Cable for total consideration valued at over $17 billion. The Purchasers' offer represented a substantial premium above the next-best offer.

After obtaining this Court's approval of bid protections, including a $440 million break-up fee, the Debtors and Time Warner and Comcast entered into Asset Purchase Agreements on April 20, 2005, pursuant to which Time Warner and Comcast agreed to purchase substantially all the Debtors' assets (the "Purchase Agreements").

Failure to close under the Purchase Agreements by the dates set forth therein would trigger certain termination rights, including the Purchasers' right to seek a $440 million break-up fee. It was so important that the Debtors close their deal in a timely way that when intercreditor disputes in this case created risks to the confirmation of the pending reorganization plan, the Debtors had to restructure the transaction to accomplish it by a court-approved section 363 sale, to preserve the economic benefits associated with the Sale.

-4-

Accordingly, on May 26, 2006, the Debtors filed a motion seeking, among other things, approval of the Sale pursuant to section 363 of the Code. A hearing to consider bidding procedures in connection with the Sale is scheduled for this coming Thursday, June 8, 2006, and a hearing to consider final approval of the Sale is scheduled on June 27, 2006.

The Sale represents an extraordinary achievement. To date it has not been disputed that the proposed Sale will generate the maximum possible recoveries for the Debtors' creditors and other constituents. Despite a multitude of other disputes among creditors in these cases, the creditors in this case have consistently expressed their approval of the Sale and its benefits.

*The TAC Action*

On May 31, 2006, the Defendants in this adversary proceeding filed an action in the United States District Court for the District of Minnesota, 06-CV-2175, which seeks, as an important element of its requested relief, an order preliminarily and permanently enjoining the Purchasers from purchasing Adelphia's assets, based on alleged antitrust violations (the "TAC Action"). The Debtors are not named as defendants in the TAC Action. Defendants have filed the TAC Action seeking, among other things, to enjoin the Purchasers from purchasing Adelphia's assets on the basis of alleged antitrust violations.

The TAC Action is apparently the latest step in a series of unsuccessful attempts to secure carriage of the America Channel on the cable systems run by Time Warner, Comcast and Adelphia—and to achieve that end, to restrict or block the Sale. TAC has sought carriage by Adelphia for years without success. After failing to persuade the Debtors to carry its programming, TAC aired its concerns regarding the Debtors' denial of carriage and the Sale to both the FCC and FTC.

However, the FTC has closed its investigation into the Sale. Although the FCC has not yet approved the Sale, the Debtors expect it to do so. I do not today make findings on the underlying merits of the antitrust action. But as ultimate facts, I find, as facts or mixed questions of fact and law, that by trying to block the sale of Adelphia's assets to Time Warner & Comcast, and to prevent the closing of a deal that will bring into this estate $17 billion in value, the defendants are exercising control over property of the estate, and that the TAC action raises a substantial and material threat to the Debtors' reorganization.

## Conclusions of Law

Section 362(a) of the Bankruptcy Code imposes what is referred to in bankruptcy parlance as the "automatic stay," one of the most critical elements of bankruptcy law for the nearly 30 years that we've lived under the modern Bankruptcy Code—and indeed, going back even further, to the days of the old Bankruptcy Act, when Bankruptcy Rule 11-44 was enacted, about 5 years before the 1979 effective date of the Code. One of section 362's several critical provisions is section 362(a)(3). It provides, in relevant part, that with exceptions not applicable here:

> [A] petition filed under section 301 of this title…
> operates as a stay, applicable to all entities, of--
>
> …
>
> (3) any act to … exercise control over
> property of the estate….

Code section 362(a)(3) protects the *in rem* jurisdiction of the Court, and prohibits interference with the disposition of the assets that are under the Court's wing, whether or not the Debtor is named as a defendant as part of the effort. And that is so without

distinction as to the form the interference takes.  *See*, *e.g.*, *In re MCEG Productions, Inc.,* 133 B.R. 232, 235 (Bankr. C.D. Cal. 1991), a decision by Judge Riblet.

I agree with the Debtors that *MCEG* is closely on point.  There a disgruntled party in interest, after unsuccessfully opposing a sale of a nondebtor subsidiary of a chapter 11 debtor, brought an action in state court seeking to enjoin completion of the transfer, or the acquisition of the corporate debtor or its subs or related companies.  Judge Riblet found that effort to be squarely violative of section 362(a)(3).   She recognized that the attempt to enjoin the sale counterparty's contract rights in the sale "necessarily implicated" the debtor's rights in the same agreement, and continued:

> Moreover, § 362(a)(3) protects against such acts to exercise control over property of the estate without distinction as to the form such interference takes. Accordingly, the filing of the injunctive action was a violation of § 362(a)(3).

While she ruled, consistent with the law in the Second Circuit, that corporate debtors didn't have a private right of action for stay violations under section 362(h) and thus have an entitlement to damages under that section, *see* 133 B.R. at 236, she found that the disgruntled party's actions "certainly rise to the level of sanctionable conduct." *Id.*

Thus, though the effort in Minnesota here was to enjoin Adelphia from selling its assets (and, as or more importantly, receiving payment for its assets) without naming Adelphia as a defendant, the failure to name Adelphia as a defendant is not dispositive.  As *MCEG* makes clear, we look to the substance and not the form.  As the Second Circuit held in *In re 48th Street Steakhouse, Inc.,* 835 F.2d 427, 431 (2d Cir. 1987):

> If action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay.

An interference with the estate's ability to dispose of its property, or, for that matter, with its contractual right to secure the $17 billion in cash and stock that it will obtain on the closing of the Time Warner and Comcast deal, is a classic, and egregious, violation of section 362(a)(3).

Additionally, section 105(a) of the Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

Section 105(a) of the Bankruptcy Code provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process. Section 105(a) powers may be exercised "where there is a basis for concluding that rehabilitation, the very purpose for the bankruptcy proceedings, might be undone by the other action." *Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 64 (2d Cir. 1986).

Included within the Court's authority is the power to issue a temporary restraining order to prevent irreparable harm to the debtor's estate or harm to the debtor's ability to reorganize. *See In re Monroe Well Serv.*, 67 B.R. 746, 750 (Bankr. E.D. Pa. 1986).

The Bankruptcy Court's injunctive powers under section 105(a) also include "the power to enjoin the Defendants from proceeding against non-debtor third parties . . . where, as here, the actions against such third parties have at least a conceivable effect upon the Debtors or implicate the interpretation or enforcement of this Court's orders." *In re Chateaugay Corp.,* 201 B.R. 48, 66. (Bankr. S.D.N.Y. 1996). Here, of course, where TAC wishes to enjoin the very transaction that will provide the underpinnings of the Debtors' reorganization, and provide the lions share of creditor

-8-

recoveries, the effort to enjoin this sale will have much more than a "conceivable effect" on the Debtors and this Court's orders.

The standards for a TRO and preliminary injunction in this Circuit, which are not materially different, are well established. To prevail, the moving party must show: (a) that it will suffer "irreparable harm in the absence of an injunction" and "(b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." *Zervos v. Verizon N.Y., Inc.,* 252 F.3d 163, 172 (2d Cir. 2001); *see also Polymer Technology Corp. v. Mimran,* 37 F.3d 74, 77-78 (2d Cir. 1994); *Green v. Drexler (In re Feit & Drexler, Inc.),* 760 F.2d 406, 415 (2d Cir 1985); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir. 1979).

Here I find, as a mixed question of fact and law, that Adelphia plainly has shown irreparable injury, by reason of the threatened loss of the $17 billion it will receive on the sale of its business, and the threatened interference with Adelphia's reorganization. There is nothing in the record now, if there ever will be, to lead me to believe that TAC, a company yet to start business, could answer for such an astronomical loss in damages. The irreparable injury is especially severe since the proposed sale involves a control premium which Adelphia was unable to obtain from anyone else, and since any delay in closing will subject the Adelphia estate to even greater prejudice, as interest on secured bank claims continues to accrue.

The infringement on this Court's jurisdiction constitutes irreparable harm as well *See In re Johns-Manville Corp.,* 97 B.R. 174, 181 (Bankr. S.D.N.Y. 1989) (Lifland, C.J.) (finding irreparable harm to future asbestos claimants by the filing of litigation in other

-9-

forums in violation of claims procedures set forth in the debtors' confirmed reorganization plan, thereby defeating the court's continuing jurisdiction to implement the plan).

I also find that Adelphia has shown a likelihood of success. I have never seen such a blatant violation of section 362(a)(3). *48th Street Steakhouse*, a controlling decision of the Second Circuit, articulates principles directly applicable here, and *MCEG,* a decision from a respected colleague, is very close to being on all fours with this case. The injunction requested in Minnesota would have the effect (and Adelphia may well be able to establish the purpose) of holding the sale of Adelphia's assets hostage in an effort to coerce Time Warner and Comcast to carry TAC's programming on their cable properties. If TAC contends that Comcast, Time Warner or Adelphia acted wrongfully in declining to put TAC on their cable systems' channel lineups, it can seek to convince a court of that, and secure an order requiring TAC's programming to be carried, or to secure damages for a refusal. But as the remedy for the alleged offense, TAC seeks very different relief—an injunction prohibiting Adelphia and its creditors from realizing on the value of their assets—directly and materially interfering with the estate's realization of the value of its assets, and with its reorganization. That goes to the heart of what section 362(a)(3) prohibits.

And an injunction here is appropriate not just to meet the needs and concerns of the Debtors; it also is appropriate to meet the needs and concerns of the Court. Section 105(a) provides:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party

> in interest shall be construed to preclude the court
> from, sua sponte, taking any action or making any
> determination necessary or appropriate to enforce or
> implement court orders or rules, or to prevent an
> abuse of process.

Like most bankruptcy judges, I invoke section 105(a) with restraint, and never inconsistently with, or to circumvent, other provisions of the Code. But it manifestly proper, in my view, to invoke section 105(a) "to enforce or implement" my earlier orders, to prevent abuses of process, and to avoid such a blatant interference with the Debtors' reorganization in these chapter 11 cases. Exercise of the Court's section 105(a) authority in this manner, and for this purpose, vindicates the interests of the *Court,* as much as (and perhaps more than) it vindicates the interest of an individual litigant. Particularly in such a situation, it is not surprising that the usual grounds for injunctive relief, such as irreparable injury, need not be shown in a proceeding for an injunction under section 105(a). *See LTV Steel Co. v. Board of Education (In re Chateaugay Corp.),* 93 B.R. 26, 29 (S.D.N.Y. 1988) (Leval, J., then a District Judge); *Garrity v. Leffler (In re Neuman),* 71 B.R. 567, 571 (S.D.N.Y. 1987) (Sweet, J.); *C & J Clark America, Inc. v. Carol Ruth, Inc. (In re Wingspread Corp.),* 92 B.R. 87, 92 (Bankr. S.D.N.Y. 1988) (Brozman, C.J.).

I issue this injunction notwithstanding my assumption that the injunctive relief requested in Minnesota would be very difficult to obtain. Aside from any deficiencies that might exist as a matter of federal antitrust law (a matter as to which I take no position), I find it somewhat difficult to see how any injunction prohibiting the pending sale could be issued without requiring Adelphia to be named as a party to give it an opportunity to address the extraordinary injury Adelphia and its creditors would suffer if the sale were enjoined, and without also requiring a $17 billion bond for the value Adelphia would receive on the sale that is proposed to be blocked. But the prejudice to

-11-

Adelphia and its creditors is so severe, and the violations of section 362(a)(3) and the interference with reorganization are all so blatant, that I must stop this in its tracks. If TAC wishes to have its carriage concerns addressed by means that are not violative of section 362(a)(3), or interfere with this Court's *in rem* jurisdiction and Adelphia's ability to reorganize, I will hear argument as to the practicality of narrower relief at the time we consider the preliminary injunction.

To my surprise, this Court's jurisdiction over this matter was questioned. Let me take a couple of minutes to put that matter to rest.

The subject matter jurisdiction of the district courts (and hence bankruptcy courts) with respect to bankruptcy matters arises principally from 28 U.S.C. § 1334. *See Buena Vista Television v. Adelphia Communications Corp. (In re Adelphia Communications Corp.*), 307 B.R. 404, 412-414 (Bankr. S.D.N.Y. 2004), discussing the applicable law in greater detail.

After providing, in its subsection (a), that the district courts have jurisdiction (and, indeed, exclusive jurisdiction) over *cases* under title 11 (a matter not relevant here), 28 U.S.C. § 1334 provides, with respect to *proceedings* (which include, in addition to contested matters in cases, adversary proceedings like this one):

> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

The three types of jurisdiction that district (and hence bankruptcy) courts thus may exercise are "arising under" and "arising in" jurisdiction (which the Court regards as species of federal question jurisdiction), and "related to" jurisdiction.

As Adelphia properly observes, the test in the Second Circuit (like most Circuits) for determining the existence of "related to" jurisdiction under 28 U.S.C. § 1334 is whether the outcome of a proceeding "might have any 'conceivable effect' on the bankrupt estate," or if the proceeding has "a significant connection" with the bankrupt estate. *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 114 (2d Cir. 1992).

As Chief Judge Mukasey of the district court noted when considering an earlier "related to" issue under section 1334(b):

> The Third Circuit articulated what has become the prevailing definition of "related [to]" jurisdiction: "[A] civil proceeding is related to bankruptcy [if] ··· *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or the debtor's property. An action is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*Weisman v. Southeast Hotel Properties Ltd. Partnership,* 1992 WL 131080, at *3 (S.D.N.Y. 1992) (emphasis in original).

And though it's not necessary now to decide the matter, because the "related to" jurisdiction is so obvious, I believe that because the estate relies on rights arising under Bankruptcy Code sections 362(a)(3) and 105(a), and because the estate is trying to avoid damage to a reorganization pending in this Court, "arising under" and "arising in" jurisdiction are present here as well.

Also, the Bankruptcy Court has inherent ancillary jurisdiction over the Defendants and the claims asserted in the TAC Action, irrespective of statutory grants of authority. As Chief Judge Lifland of this Court stated:

> Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders wholly independent of the statutory grant of jurisdiction under 28 U.S.C. § 1334. *Local Loan Co. v. Hunt,* 292 U.S. 234, 239, 54 S. Ct. 695, 696, 78 L. Ed. 1230 (1934); *Paris Mfg. Corp. v. Ace Hardware Corp.* (*In re Paris Indus. Corp.*), 132 B.R. 504, 508 (D. Me. 1991) ("Bankruptcy Courts must have the ability to enforce prior orders and 'secure or preserve the fruits and advantages of a judgment or decree rendered therein' ... The proceeding being ancillary and dependent, the jurisdiction of the Court follows that of the original cause ...") (quoting *Local Loan Co)*.

*LTV Steel Co. v. Back (In re Chateaugay Corp.),* 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996). In later proceedings in that same case, the district court upheld the bankruptcy court's injunctive relief, enjoining the appellants from pursuing remedies in courts other than the bankruptcy court. *See Back v. LTV Steel Co.,* 213 B.R. 633, 637 (S.D.N.Y. 1997).

Then, a word about the somewhat strange contention that I don't have jurisdiction to issue a TRO because the adversary complaint wasn't served yet. I've never heard that contention before, in 30 years of practice, and about 6 on the bench. Rule 65(b) sets forth the notice requirements for the issuance of a TRO, and even provides that a TRO can be issued without any notice at all. As a matter of practice, I and most federal judges insist on notice, except in those rare cases where notice would vitiate the purposes of the requested injunction. But the service of the complaint, which could properly be done by U.S. Mail under Fed. R. Bankr. P. 7004(b), has nothing to do with that.

Finally, in e-mails to Debtors' counsel (though not in court, or by pleadings subject to Rule 11), counsel for TAC seemed to raise some kind of *in personam* jurisdiction claim, suggesting that TAC and/or its counsel was immune to answering in

-14-

this Court for its conduct, and expressing an intention to quash any process or order served up in this case. I find this threat puzzling. Bankruptcy Rule 7004(d), entitled "Nationwide Service of Process," provides that "[t]he summons and complaint and all other process except a subpoena may be served anywhere is the United States." Bankruptcy Rule 7004(f), entitled, "Personal Jurisdiction," states:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons . . . in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

In *Enron Corp. v. Arora (In re Enron, Corp. et al.)*, 434 B.R. 416 (Bankr. S.D.N.Y. 2004), Judge Gonzalez of this Court held that the Fifth Amendment's Due Process Clause requires courts to use a *federal* minimum contacts test, not an inquiry into the defendants' minimum contacts with the forum *state*, to determine whether personal jurisdiction exists under Bankruptcy Rule 7004(f). *See Enron*, 316 B.R. at 445 (citing, *inter alia*, *Medical Mutual of Ohio v. De Soto*, 245 F.3d 561, 567-68, in which the Sixth Circuit noted with regard to an ERISA nationwide service of process provision that "when a federal court exercises jurisdiction pursuant to a nationwide service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern [under the Due Process Clause of the Fifth Amendment] is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States"). Obviously, that's the case here.

If TAC's counsel wishes to move before me to "quash" the order served upon it, it may be within its rights to seek such relief (subject to the "Motions for Reargument"

requirements of Local Bankruptcy Rule 902301 and my Case Mgt. Order #3, ¶ 29). And TAC will of course have a chance to be heard when Adelphia proceeds with its request for a preliminary injunction. But until such time, if any, that I or any higher court vacates the TRO issued today, I expect TAC and its counsel to comply with it.

Dated: New York, New York             *s/Robert E. Gerber*
      June 5, 2006                           United States Bankruptcy Judge