UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------ x
In re                                           :
                                                :    Chapter 11
ADELPHIA COMMUNICATIONS CORP., *et*             :
*al.*,                                          :    Case No. 02-41729 (REG)
                    Debtors.                    :    (Jointly Administered)
                                                :
------------------------------------------------------ x
ADELPHIA COMMUNICATIONS CORP., *et*             :
*al.*,                                          :
                                                :
                    Plaintiffs,                 :
                                                :
              - against -                       :    Adv. Pro. No. 06-01528
                                                :
THE AMERICA CHANNEL, LLC, ALIOTO               :
LAW FIRM and GRAY, PLANT, MOOTY,               :
MOOTY & BENNETT, P.A.,                          :
                                                :
                    Defendants.                 :
------------------------------------------------------ x


DECISION ON MOTION FOR PERMANENT
<u>INJUNCTION (THE AMERICA CHANNEL)</u>


APPEARANCES:


WILLKIE FARR & GALLAGHER LLP
Counsel for Plaintiff Debtors and Debtors in Possession
787 Seventh Avenue
New York, NY 10019-6099
By:    Brian E. O'Connor, Esq. (argued)
       Michael D. Maimin, Esq.

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Counsel for Official Committee of Unsecured Creditors
1633 Broadway
New York, NY 10019
By:    Jonathan E. Minsker, Esq.

MORGENSTERN JACOBS & BLUE, LLC
Counsel for Official Committee of Equity Security Holders
885 Third Avenue, Suite 3040
New York, NY 10022
By:      Gregory A. Blue, Esq.

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
Counsel for Defendants The America Channel, Alioto
Law Firm, and Gray, Plant, Mooty, Mooty & Bennett, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
By:      Daniel Shulman, Esq. (argued)

ALIOTO LAW FIRM
Counsel for Defendants The America Channel, Alioto
Law Firm, and Gray, Plant, Mooty, Mooty & Bennett, P.A.
555 California Street
Suite 3160
San Francisco, CA  94104
By:      Joseph M. Alioto, Esq.

BEFORE:        ROBERT E. GERBER
               UNITED STATES BANKRUPTCY JUDGE

In this adversary proceeding under the umbrella of the approximately 230 jointly

administered chapter 11 cases of Adelphia Communications Corporation and its

subsidiaries (the "Debtors"), the plaintiff-Debtors move, pursuant to sections 362(a)(3)

and 105(a) of the Bankruptcy Code, for a declaratory judgment holding that the automatic

stay was violated, and for a permanent injunction[1] enjoining the prosecution of an

antitrust action in Minnesota—in which the prayers for relief include, as a prominent

feature, an injunction restraining the now-pending sale to Time Warner Cable and

Comcast of the Debtors' assets that will be the key element of the Debtors'

reorganization in this Court.  The defendants are The America Channel ("TAC," a cable

---

[1]        By agreement between the parties, the Debtors' motion for a preliminary injunction was merged
with the hearing and consideration of a request for a permanent injunction.

channel, not yet in operation, that is aggrieved, *inter alia*, by the failure of Time Warner, Comcast and Adelphia to agree to carry The America Channel on their cable systems), and TAC's lawyers, who, until the entry of a TRO by this Court restraining their conduct, had been trying to enjoin Adelphia's pending sale in the United States District Court for the District of Minnesota.

For the reasons that follow, the Court finds that the defendants' effort to enjoin the sale of Adelphia's assets in Minnesota—even though denominated as an effort to enjoin the "purchase," and even though effected by not naming Adelphia as a defendant in the suit to achieve that end—is a classic, and egregious, violation of section 362(a)(3) of the Bankruptcy Code. Thus the Court will issue the requested declaratory judgment. The Court will also issue a permanent injunction, enjoining the defendants from taking any steps to exercise control over the Debtors' property in any forum other than this Court. But the injunction will be in a form narrower than the original TRO, and will permit the defendants alternatively to proceed with their action in Minnesota if they seek damages only, or seek equitable relief that does not interfere with the upcoming sale.

The following are the Court's Findings of Fact, Conclusions of Law and bases for the exercise of its discretion in connection with this determination.

Findings of Fact

As facts the Court finds as follows:[2]

*The Sale to Time Warner and Comcast*

Most of the Debtors in these cases filed for relief under chapter 11 of the Bankruptcy Code on June 25, 2002. In April 2004, the Debtors announced their decision

---

[2] Both sides waived an evidentiary hearing. The facts recited here, so far as the Court can ascertain, are undisputed, or are conclusions drawn from undisputed facts.

to pursue a sale of substantially all of the Debtors' assets, and began a court-supervised, multi-phase auction process in which the Debtors were advised by UBS Securities, Allen & Company, and Sullivan & Cromwell.  The Debtors considered numerous methods of sale and bids.  After careful consideration and significant negotiation, the Debtors entered into definitive sale agreements (the "Purchase Agreements") with Time Warner and Comcast (the "Purchasers"), pursuant to which the Purchasers agreed to purchase substantially all of the Debtors' assets, for aggregate consideration of approximately $17.6 billion. The Purchasers' offer represented a substantial premium above the next-best offer.

Failure to close under the Purchase Agreements by the dates set forth therein would trigger certain termination rights, including the Purchasers' right to seek a $440 million break-up fee.  It was so important that the Debtors close their deal in a timely way that when intercreditor disputes in this case created risks to the timely confirmation of the pending reorganization plan, the Debtors had to restructure the transaction to accomplish it by a court-approved section 363 sale, to preserve the critically important economic benefits associated with the sale.

Accordingly, on May 26, 2006, the Debtors filed a motion seeking, *inter alia*, approval of the sale under section 363 of the Bankruptcy Code.  At a hearing on Friday, June 16, 2006, this Court approved modified bidding procedures in connection with the sale, to accommodate the modifications in the transaction necessary to achieve the required closing within the necessary time constraints.  The hearing to consider final approval of the sale is scheduled on June 27, 2006.

The sale represents an extraordinary achievement, and the loss of it would be a corresponding disaster. To date it has not been disputed that the sale will generate the maximum possible recoveries for the Debtors' creditors and other constituents. Despite a multitude of other disputes amongst themselves in these cases, the creditors in this case have consistently expressed their approval of the sale and its benefits, and their recognition of the importance of the sale's closing.

*The TAC Action*

On May 31, 2006, the Defendants in this adversary proceeding filed an action in the United States District Court for the District of Minnesota, 06-CV-2175 (the "TAC Action"). It was assigned to Hon. Donovan Frank, U.S.D.J. The TAC Action seeks, as an important element of its requested relief, an order preliminarily and permanently enjoining the Purchasers from purchasing Adelphia's assets, based on alleged antitrust violations. The Debtors are not named as defendants in the TAC Action.

The TAC Action is apparently the latest step in a series of unsuccessful attempts to secure carriage of The America Channel on the cable systems run by Time Warner, Comcast and Adelphia. TAC has sought carriage by Adelphia for years without success. After failing to persuade the Debtors to carry its programming, TAC aired its concerns regarding the Debtors' denial of carriage and the sale to both the FCC and FTC. However, the FTC has closed its investigation into the sale. Although the FCC has not yet approved the sale, the Debtors expect it to do so.

It is neither necessary nor appropriate, in this Court's view, for the Court to analyze the TAC Action claims in depth. But the general nature of the TAC Action claims, and in particular the claims for relief, requires discussion. The Court understands TAC's principal grievance to be the failure of Time Warner, Comcast, and Adelphia to

carry TAC on their cable systems. And TAC complains of that in its complaint,[3] though surprisingly, it does not seem explicitly to ask for the one kind of relief that would flow from that, an order requiring Time Warner and Comcast to carry TAC. But the complaint is broader than that. It charges Time Warner and Comcast with bid rigging in formulating their joint bid for Adelphia's assets,[4] and for monopolization and divisions of markets (including swapping of their franchises in Minneapolis and St. Paul), in alleged violation of the Sherman Act.[5] For relief, TAC seeks damages, and if the acquisition closes over its objection, a divestiture by Time Warner and/or Comcast of cable properties they might acquire. And as particularly relevant here, TAC seeks to enjoin, under section 7 of the Clayton Act, the acquisition by Time Warner and Comcast of Adelphia's assets, and performance under related contracts that were entered between Time Warner and Comcast as part of the complex arrangement under which they would collectively make this $17.6 billion acquisition.

*Proceedings In This Court and in Minnesota*

Faced with a threat to the closing of a sale that has been years in the making, the Debtors sought a TRO from this Court, blocking the defendants from prosecuting the TAC action, on June 1, 2006. This Court set the hearing for the following day, and directed that notice be served immediately, with word that the Court would hear the defendants in opposition, either in person or telephonically. But after initially saying

---

[3]    *See* TAC Action Compl. at ¶¶ 1; 26; 34; 35; 36. TAC alleges that unless one or the other of Time Warner or Comcast agrees to carry TAC, TAC will not survive. Based on this allegation, this Court can see why TAC cares about whether or not Time Warner and Comcast carry it. But this Court has greater difficulty seeing what the sale of *Adelphia* to Time Warner and/or Comcast would have to do with that.

[4]    *See id.* at ¶ 29. However, TAC never brought its concerns as to bid rigging to this Court. TAC has not asserted that it is a creditor or other stakeholder of this estate, nor even that it was a competing bidder.

[5]    *See id.* at ¶¶ 30-32; 49.

they would appear in opposition, and asserting a variety of jurisdictional and other

procedural objections in e-mails addressed to the Debtors (with copies e-mailed to the

Court),[6] the defendants declined to appear.  After an on-the-record hearing, the Court

issued a TRO, enjoining any prosecution of the TAC Action,[7] setting forth the reasons in

summary form, and advising those present that more extensive findings would be issued

later that day.  The Debtors promptly provided notice of the TRO to the defendants.

    The defendants likewise declined to participate by phone when, later in the

afternoon on that Friday, the Court dictated its more extensive Findings of Fact and

Conclusions of Law in connection with its issuance of the TRO.  However, still later that

day, the defendants moved in the Minnesota District Court to "quash service and vacate

order of United States Bankruptcy Court for the Southern District of New York"—in

other words, to collaterally attack and vacate this Court's TRO in Minnesota.

    At the opening of the Court on the following Monday, the Debtors moved in this

Court for an order finding the defendants in contempt, noting the obvious fact that the

defendants' motion to collaterally attack this Court's TRO in the very Minnesota action

whose prosecution had been enjoined evidenced both knowledge, and disregard, of the

---

[6]    Those jurisdictional and procedural objections were discussed in this Court's decision on the TRO
application.  *See Adelphia Commc'n Corp. v. The America Channel LLC (In re Adelphia
Commc'n Corp.)*, 2006 WL 1529357, *6-8 (Bankr. S.D.N.Y. June 2, 2006) ("*TAC TRO
Decision*") (*inter alia*, rejecting contentions that this Court lacked subject matter jurisdiction;
could not issue TRO because the complaint had not been served yet; and could not impose
jurisdiction on defendants in another state).  The defendants no longer press them.

[7]    It enjoined the defendants from:

        (a) continuation of further proceedings in the TAC
    action;

        (b) taking any other action, with the exception of any
    action taken in this Court, to interfere with this Court's
    jurisdiction over the Debtors' chapter 11 case; and

        (c) taking any other action, with the exception of any
    action taken in this Court, to interfere with the sale of
    substantially all of Adelphia's assets to the Purchasers.

TRO.  The contempt hearing was set for 3:00 p.m. that day (again with the ability to be

heard by phone), and this time one of the defendants, TAC lawyer Daniel Shulman,

appeared by phone.  In the contempt hearing, Mr. Shulman stated that he did not want to

be found in contempt; that going forward, he (and his co-counsel, defendant Alioto)

would comply with the Court's TRO; and that he would advise Judge Frank that he was

withdrawing his motion to attack this Court's order in Judge Frank's court.[8]  This Court

found the defendants to be in contempt for the plain violation of the TRO, but in light of

Mr. Shulman's undertaking, the Court regarded coercive measures as unnecessary, and

the Court continued the contempt hearing, insofar as it dealt with costs or other remedies,

to await additional information, most significantly with respect to future compliance.

*Ultimate Facts*

In what may be an excess of caution, the Court considers it inappropriate to make

factual findings as to the *purpose* of TAC's efforts.  But the Court plainly is in a position

to make findings as to the *effect*.  As the Debtors argue,[9] the implication "that an

injunction prohibiting the purchase of substantially all of the Debtors' assets is somehow

a different animal than an injunction of the sale of those assets is an argument that would

do Lewis Carroll proud."  And as the Debtors also argue,[10] whether Time Warner and

Comcast are enjoined from purchasing substantially all of the Debtors' assets or the

Debtors are enjoined from selling substantially all of their assets makes little difference to

the Debtors, their constituents, or the Court; in either case, the sale would be enjoined.

---

[8]    As this Court advised the parties on the record (*See* Contempt Hrg. Tr. at 4), it has conferred with
Judge Frank to ensure that each judge was aware of the other's needs and concerns, to the end that,
consistent with the requirements of the law, neither judge stepped on the toes of the other.

[9]    Debtors' Reply Br. at 11.

[10]    *Id.*

The reality of the factual situation is that the Adelphia estate's receipt of $17.6 billion in value for its assets, upon which Adelphia's whole reorganization will rest, is threatened by the defendants' pending effort to enjoin the Purchasers' acquisition (and hence Adelphia's disposition) of Adelphia's assets.  The defendants are trying to block the liquidation of the assets of this estate, and to derail a sale that has been years in the making and that is essential to the maximization of creditor recoveries in these chapter 11 cases.  This Court can easily find, and does find, that the threatened conduct "impedes" the Debtors' reorganization.  But that would be the understatement of the decade.  It would torpedo it.

The Court further finds as a fact (or a mixed question of fact and law) that by trying to block the sale of Adelphia's assets to Time Warner & Comcast, and to prevent the closing of a deal that will bring into this estate $17.6 billion in value, the defendants are exercising control over property of the estate, and that the TAC Action raises a substantial and material threat to the Debtors' reorganization.

<u>Discussion</u>

<u>I.</u>

<u>Issuance of Declaratory Judgment</u>

<u>A.</u>

Section 362(a) of the Bankruptcy Code imposes what is referred to in bankruptcy jargon as the "automatic stay," one of the most critical elements of bankruptcy law since the enactment in 1978 of the modern Bankruptcy Code—and indeed, going back even further, to the days of the former Bankruptcy Act, when rules, including former Bankruptcy Rule 11-44, were enacted to provide protections for bankruptcy estates that

were not in the former Act.[11]   One of section 362's several critical provisions is section

362(a)(3).  It provides, in relevant part, that with exceptions not applicable here:

> [A] petition filed under section 301 . . .of this title
> . . . operates as a stay, applicable to all entities, of--
>
> . . .
>
> (3) any act to . . . exercise control over
> property of the estate . . . .

Bankruptcy Code section 362(a)(3) protects the *in rem* jurisdiction of the Court,

and prohibits interference with the disposition of the assets that are under the Court's

wing—whether or not the Debtor is named as a defendant as part of the effort.  And that

is so without distinction as to the form the interference takes.[12]  That is the teaching of

another bankruptcy court facing a nearly identical issue, and a controlling decision of the

Second Circuit.

*MCEG* is closely on point.  There a party in interest, after unsuccessfully

opposing a sale of a nondebtor subsidiary of a chapter 11 debtor, brought an action in

state court seeking to enjoin completion of the transfer, or the acquisition of the corporate

debtor or its subsidiaries or related companies.  Judge Riblet found that effort to be

squarely violative of section 362(a)(3).  She recognized that the attempt to enjoin the sale

counterparty's contract rights in the sale "necessarily implicated" the debtor's rights in

the same agreement, and continued:

> Moreover, § 362(a)(3) protects against such acts to
> exercise control over property of the estate without
> distinction as to the form such interference takes.

---

[11]  *See Moratzka v. Visa U.S.A. (In re Calstar, Inc.)*, 159 B.R. 247, 257 & n.28 (Bankr. D. Minn. 1993) (Kressel, C.J.) (explaining the history).

[12]  *See*, *e.g.*, *In re MCEG Prods., Inc.,* 133 B.R. 232, 235 (Bankr. C.D. Cal. 1991) ("*MCEG*") (Riblet, J.).

> Accordingly, the filing of the injunctive action was
> a violation of § 362(a)(3).[13]

While she ruled, consistent with the law in the Second Circuit,[14] that corporate debtors

did not have a private right of action for stay violations under section 362(h) and thus

have an entitlement to damages under that section,[15] she found that the disgruntled

party's actions "certainly rise to the level of sanctionable conduct."[16]

Thus, though the effort in Minnesota here was to enjoin Adelphia from selling its

assets (and, as or more importantly, receiving payment for its assets) without naming

Adelphia as a defendant, the failure to name Adelphia as a defendant is not dispositive.

As *MCEG* makes clear, we look to the substance and not the form.

*MCEG* is not only consistent with the law announced by the Second Circuit. It

would have been compelled by it—as this Court's decision is as well. As the Second

Circuit held in its often-cited decision in *48th Street Steakhouse*:[17]

> If action taken against the non-bankrupt party
> would inevitably have an adverse impact on
> property of the bankrupt estate, then such action
> should be barred by the automatic stay.[18]

---

[13]    *MCEG*, 133 B.R. at 235.

[14]    *See Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.),* 920 F.2d
183, 184-87 (2d Cir. 1990) (holding that only natural persons, and not corporations, may seek
damages under section 362(h)). The Second Circuit noted that "[f]or other debtors, contempt
proceedings are the proper means of compensation and punishment for willful violations of the
automatic stay," *id.* at 187, and though it might be debated whether contempt could properly be
invoked before the bankruptcy court issued its own order enforcing the automatic stay, that issue
would seemingly be put to rest in any instances after the bankruptcy court issued a TRO,
preliminary injunction or permanent injunction to enforce the stay.

[15]    *See MCEG*, 133 B.R. at 236.

[16]    *Id.*

[17]    *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.),* 835 F.2d 427
(2d Cir. 1987), *cert. denied*, 485 U.S. 1035, 108 S. Ct. 1596, 99 L. Ed. 2d 910 (1988).

[18]    835 F.2d at 431. The Second Circuit approvingly cited *Harsh Inv. Corp. v. Bialac (In re Bialac),*
712 F.2d 426, 431-32 (9th Cir. 1983) (automatic stay prohibited creditor from foreclosing on
property in which debtor had right of redemption, even though property was owned by non-

Thus it does not matter that the defendants strategically omitted the Debtors from the caption in the TAC Action. An injunction in Minnesota against a closing of the Debtors' sale of their assets "would inevitably have an adverse impact on the property of the bankrupt estate,"[19] in a hugely damaging way. And the defendants' effort to prosecute it was—and would continue to be—a violation of section 362(a)(3) as egregious or more so than that faced by the Second Circuit in *48th St. Steakhouse*, or any of the other section 362(a)(3) cases of which this Court is aware.

The defendants attempt to distinguish *MCEG* and *48th Street Steakhouse*, but this Court finds them directly on point. Their contention that "neither case is an antitrust action" is discussed below. Their contention that the enjoined party in *MCEG* participated in the bankruptcy case before Judge Riblet, while factually correct, is irrelevant. Judge Riblet's finding of a violation of section 362(a)(3) did not rest on the participation or non-participation of the enjoined party in the bankruptcy case, as it might, by way of example, if it had been based on a waiver resulting from such participation. As both the quoted excerpt and entirety of *MCEG* make clear, Judge Riblet based her ruling instead on what the enjoined party was thereafter *doing to the estate*, and on what section 362(a)(3) proscribed—the exercise "of control over property of the estate."

Similarly, the defendants do not attempt to distinguish *48th St. Steakhouse*, a controlling decision of the Second Circuit, by any means other than contending that *48th St. Steakhouse* was not an antitrust case. Indeed, since they recognize that

---

bankrupt individuals); *Plessy Precision Metals, Inc. v. Metal Ctr., Inc.* (*In re Metal Ctr., Inc.*), 31 B.R. 458, 462 (Bankr. D. Conn. 1983) ("the debtor's protection must be extended to enjoin litigation against others if the result would be binding upon the debtor's estate").

[19]     *48th St. Steakhouse*, 835 F.2d at 431.

-12-

"[a]dmittedly, in both cases [*MCEG* and *48th St. Steakhouse*], a third party was taking

action against non-parties to the bankruptcy the result of which could have adversely

affected the debtor's estate,"[20] they concede the existence of facts there in common with

the facts here that make those cases indistinguishable in any material respect.

The injunction requested in Minnesota would have the effect of holding the sale

of Adelphia's assets hostage in TAC's effort to cause Time Warner and Comcast to carry

TAC's programming on their cable properties.  If TAC contends that Comcast or Time

Warner acted wrongfully in declining to put TAC on their cable systems' channel

lineups, it can seek to convince a court of that, and secure an order requiring TAC's

programming to be carried, or to secure damages for a refusal.  But as the remedy for the

alleged offense, TAC seeks very different relief—an injunction prohibiting Adelphia and

its creditors from realizing on the value of their assets—directly and materially

interfering with the estate's realization of the value of its assets, and with its

reorganization.  That goes to the heart of what section 362(a)(3) prohibits.

So unless there is a written or unwritten exception to section 362(a)(3) permitting

exercise of control over property of the estate when such is done by a private antitrust

litigant, this is an easy case.  An interference with the estate's ability to liquidate its

property, and to realize on the value of its assets—especially at this time, and in this

manner—is a classic, and egregious, violation of section 362(a)(3).

---

[20]     TAC Br. at 24.

B.

The Court then turns to whether there is any written or unwritten exception to

section 362(a)(3), for litigants prosecuting private actions under the antitrust laws.[21]

The absence of any applicable written exception appears to be beyond dispute.

The defendants have not pointed to any other section of the Bankruptcy Code, or of the

United States Code, that provides an exception for a private litigant asserting an antitrust

claim.

Notably, the Bankruptcy Code *does* provide an at least arguable exception for a

*governmental* litigant making such a claim.  Section 362(b) of the Bankruptcy Code,

which lays out the exceptions to the applicability of the automatic stay, provides, in

relevant part:

---

[21]    This is in essence the defendant's only defense.  The defendants say that the Debtors' request for
injunctive relief (and the Court's earlier TRO) raise "just a single, narrow, but nonetheless
extremely important issue of federal law":

> whether a United States Bankruptcy Court has the power to
> require that a Clayton Act Section 7 action against buyers of a
> bankrupt's assets be brought only in the Bankruptcy Court,
> and therefore the concomitant power to enjoin a non-party to
> the bankruptcy from litigating against the buyers, also non-
> parties to the bankruptcy, in any other federal court.

(TAC Br. at 2).

But that is not the issue here.  The issues underlying Adelphia's request for injunctive relief
(which plainly are not "single") are first:

> — whether a provision of the Bankruptcy Code expressly
> forbids what the defendants have done and wish to continue to
> do;

> — whether any other section of the Bankruptcy Code, or of
> the United States Code (*e.g.* the Clayton Act) provides an
> applicable exception that might permit their actions; and

> — whether there is alternatively some kind of unwritten
> exception to the requirements of the Bankruptcy Code, which
> might be broad enough to encompass the defendants'
> contention that they can accomplish something forbidden by
> federal statutory law by noting the (undisputed) importance of
> the federal antitrust laws.

-14-

The filing of a petition . . . does not operate as a stay—

> (4) under paragraph . . . (3) . . . of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a *governmental unit* . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power . . . .[22]

But there is no similar provision in the Bankruptcy Code relating to the commencement or continuation of actions or proceedings by *private litigants*, no matter how important the rights they wish to vindicate may be.

The Court is then left with the alternate basis upon which TAC's position might have merit—that there is or should be an *unwritten* exception to section 362(a)(3) for private litigants asserting antitrust claims. Particularly in light of the repeated pronouncements by the United States Supreme Court directing the lower courts to construe statutes in accordance with their plain terms,[23] the Court is not in a position to so hold.

---

[22]   11 U.S.C. § 362(b)(4) (emphasis added). The term "governmental unit" is defined in the Bankruptcy Code, in section 101(27). TAC does not claim to be a governmental unit.

[23]   *See, e.g., United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 241, 109 S. Ct. 1026, 1030, 103 L. Ed. 2d 290 (1989) ("where . . . the statute's language is plain, the sole function of the courts is to enforce it according to its terms") (internal quotation marks omitted); *Connecticut National Bank v. Germain,* 503 U.S. 249, 254, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992) ("[w]hen the words of a statute are unambiguous, . . . judicial inquiry is complete"); *Lamie v. United States Trustee,* 540 U.S. 526, 534, 124 S. Ct. 1023, 1030, 157 L. Ed. 2d 1024 (2004) ("It is well established that when a statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms") (internal quotation marks omitted).

Along with other things listed in section 362(a) that the automatic stay forbids, section 362(a)(3) unambiguously and unequivocally prohibits attempts to exercise control over property of the estate. This creates a first tier of statutory direction from Congress that the Court must honor. If that by itself is not the end of the matter, this Court cannot then ignore the fact that in section 362(b) of the Bankruptcy Code, Congress expressly listed the exceptions it wished to create. An exception for private antitrust litigants (or for other private litigants, including those asserting claims under other federal laws) is conspicuously absent from that list—even though an exception for governmental litigants was created. This creates a second tier of statutory direction from Congress that this Court must honor. There is no room in the language of section 362(a)(3), in the structure of section 362 as a whole, or in the remainder of the Bankruptcy Code's statutory scheme, for disregarding or rewriting section 362(a)(3), or for adding exceptions not already in section 362(b).

The defendants acknowledge that no case has ever held that there is an antitrust exception to the applicability of section 362(a)(3). They say that after exhaustive research, they have unearthed only a single case in which a court "came even close to considering the issue"—although they acknowledge even then that the issue "was not reached and decided."[24] But in discussing that case,[25] the defendants give only minimal attention to the decision at the *bankruptcy court* which Judge Lasker affirmed, which determined that a bankruptcy court *could* enjoin litigation of antitrust claims to block the

---

[24] TAC Br. at 12.

[25] *In re Financial News Network, Inc.*, 126 B.R. 157 (S.D.N.Y. 1991) (Lasker, J.) (*"FNN"*) (affirming bankruptcy court order enjoining governmental litigants from asserting antitrust claims in forums other than bankruptcy court, holding that by reason of their extensive involvement in the bankruptcy case, they had submitted themselves to the jurisdiction of the bankruptcy court).

sale transaction in any court other than the bankruptcy court—and which had issued exactly such an order.[26]

In *FNN*, CNBC was the successful bidder to purchase the assets of Financial News Network, a debtor in this district, but some asserted that the acquisition would have an anticompetitive effect.  The bankruptcy court entered an order that any antitrust objections or actions by the FTC or state agencies to bar the proposed acquisition of Financial News Network had to be brought before the bankruptcy court.  The FTC and various states appealed the order to the district court.  The FTC argued (perhaps among other things) that the automatic stay provision of section 362(a) could not reach the FTC's authority to seek to enjoin contemplated mergers; that the FTC's proposed action would be brought against the acquiring entity, and not the debtor; that section 362(a)(3) should be held to apply solely to creditor claims against the debtor's asset; and that section 362(b)(4) exempted regulatory actions from the automatic stay provisions of

---

[26]     *See id*. at 159.  The order appealed from provided:

> [A]ny entity seeking to enjoin the consummation of the transactions approved herein based upon matters that have been solely before this court must commence such action in this Court; *provided, however*, that such commencement shall be without prejudice to the rights afforded pursuant to 28 U.S.C. § 157(d).

The reference to 28 U.S.C. § 157(d) in the proviso will be meaningful to those in the bankruptcy community.  Section 157(d) provides:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown.  The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

Thus the *FNN* bankruptcy court had recognized the possibility that while any entity seeking to enjoin the sale would have to commence the action in the bankruptcy court, the merits of the controversy might ultimately be decided by the district court in the bankruptcy court's district.

-17-

section 362(a).  It also disputed a contention that it had submitted to the bankruptcy court's jurisdiction.

Judge Lasker noted that the parties had presented extensive arguments on the "important question of the intersection of the Bankruptcy Court's jurisdiction over matters affecting disposition of the debtor's estate and the FTC's statutory authority to enforce the nation's antitrust laws in the forum of its choice, as well as the States' independent authority to enforce their antitrust laws."[27]  But he ruled that the issue did not need to be reached, because the bankruptcy court had appropriately found that both the FTC and the states, through their extensive involvement in the proceedings below, had submitted themselves to the jurisdiction of the bankruptcy court.

The defendants are only partially right when they say that in *FNN*, the issue of an antitrust exception to section 362(a)(3) was "not reached or decided."[28]  They are right to the extent that they observe that Judge Lasker did not decide whether a governmental unit could assert antitrust claims under an exception to section 362(a)(3).  But the bankruptcy court did, and found that the governmental unit could not.  More importantly, Judge Lasker, in the district court, expressly held that "[t]he bankruptcy court is legally competent to resolve antitrust issues raised by proceedings before it,"[29] noting that the bankruptcy court "rightly noted that the FTC and the states retain[ed] the ability to seek withdrawal of the reference either of the entire proceeding or its antitrust components to the District Court."[30]

---

[27]     *FNN*, 126 B.R. at 160.

[28]     TAC Br. at 13.

[29]     *FNN*, 126 B.R. at 161.

[30]     *Id.*

Judge Lasker went on to comment on the effect of his decision affirming the order of the bankruptcy court:

> This result is consistent with the purpose of allowing the Bankruptcy Court broad jurisdiction over matters concerning the disposition of the debtor's assets. It is not contrary to public policy granting antitrust enforcement agencies discretion over the forum in which to seek relief because if the sale is consummated the FTC and the States retain the ability to sue in the forum of their choice to bring about divestiture.[31]

TAC fails appropriately to understand the bankruptcy issues in *FNN* when TAC asserts that *FNN* is helpful to TAC because "[h]ad the district court in [*FNN*] agreed that the bankruptcy court had the broad authority it claimed, there would have been no need for the district court to decide the case based on the states' and FTC's consent to the bankruptcy court's jurisdiction."[32]  While it may be true that if the bankruptcy court's order had been plainly correct for other reasons, there would have been no need for the district court to consider consent to jurisdiction, it is plain that the case was a challenging one because the appellants were *governmental units*.  With the perspective of a judge who sees bankruptcy issues on a regular basis, it is easy to see what the difficult issue before Judge Lasker was.  It was the *import of the section 362(b)(4) regulatory power exception*,[33] and whether (assuming that exception applied) it could trump the bankruptcy court's interest in maximizing value and protecting bankruptcy court jurisdiction over matters affecting disposition of the assets of the estate.  Judge Lasker repeatedly noted that the issue he was addressing involved the needs and concerns of *governmental*

---

[31]    *Id.*

[32]    TAC Br. at 13-14.

[33]    This was one of the FTC's contentions, *see* p.17 *supra*, and in this Court's view, by far the strongest of them.

*agencies* to enforce laws entrusted to them[34]—needs and concerns that, like section 362(b)(4), are inapplicable when the entity trying to block an estate's liquidation of its assets is a private litigant.[35]

While Judge Lasker did not decide the thorny issue of whether a governmental unit could seek to enjoin a disposition of estate assets in a non-bankruptcy forum, the *FNN* cases, especially when the bankruptcy court and district court decisions are taken together, are nevertheless instructive. They actually support Adelphia here. Both courts plainly rejected contentions raised by the FTC that efforts to enjoin dispositions of estate assets were not covered by section 362(a)(3), either because the action would be brought against non-debtor acquirors of the estate's assets, or because section 362(a)(3) applied only to creditors.[36] Otherwise, the bankruptcy court would not have issued the injunction it did, and—with a consent to jurisdiction or not—Judge Lasker could not have affirmed it.

Nor does TAC's other principal authority for the existence of an unwritten antitrust exception to section 362(a)(3), the Seventh Circuit's decision, under the former

---

[34]    *See FNN*, 126 B.R. at 160 (considering "the FTC's statutory authority to enforce the nation's antitrust laws" in a forum of the FTC's choice, and the "States' independent authority to enforce their antitrust laws").

[35]    Likewise, reliance on *United States v. SunGard Data Sys., Inc*., 172 F. Supp. 2d 172 (D.D.C. 2001) is misplaced, because as its name implies, that action was commenced by the Department of Justice. The DoJ, like the FTC, would have at least arguable rights under section 362(b)(4) that a private litigant does not have.

The issue faced in *FNN* might arise here if the FTC, as contrasted to TAC, asserted antitrust claims with respect to Adelphia's sale of its assets to Time Warner and Comcast, and if the FTC were the one seeking an injunction blocking the sale. But as noted above, the FTC cleared the transaction, and so the question of a governmental unit's rights to assert antitrust claims under an arguable section 362(b)(4) exception, which, absent consent, would have been before Judge Lasker to decide, will apparently not have to be addressed in the *Adelphia* cases.

[36]    TAC apparently argues only the former.

Bankruptcy Act, in *Harwald Company*,[37] assist TAC in this matter.  As a case decided

under the former *Act*, *Harwald Company* (which involved claims by disgruntled bidders

that the estate should reject a higher bid because of asserted antitrust concerns, which the

bankruptcy court, district court and Seventh Circuit all rejected) had nothing to do with

the present Bankruptcy Code's section 362(a)(3), or the existence, if any, of any

unwritten exceptions to section 362(a)(3).  While there is language in *Harwald Company*

stating that the bankruptcy court was "simply not the proper forum" to consider the

antitrust issues that there had been asserted, that was said in the context of the Seventh

Circuit's stated view that it should be the prospective purchaser of the assets, and not the

estate's creditors, "who should properly bear the risk of any possible peril" because of a

purchase at a valid bankruptcy sale.[38]

   More importantly, the applicable jurisdictional provisions in the days of the

former Act differed materially from those now in effect, under the current bankruptcy-

related provisions of the Judicial Code, particularly 28 U.S.C. §§ 1334 and 157.[39]  Now,

while the applicable jurisdictional provisions are not as broad as they were before the

Supreme Court's decision in *Marathon*,[40] they are still much broader than they were in

the days of the former Act.  A district court (and hence bankruptcy court) now has

"related to" jurisdiction with respect to antitrust claims affecting a bankruptcy estate,

---

[37]     *In re Harwald Co.*, 497 F.2d 443 (7th Cir. 1974).

[38]     *Id.* at 445.

[39]     *See In re PSINet*, 271 B.R. 1, 32-35 (Bankr. S.D.N.Y. 2001) (Gerber, J.) (discussing the
         jurisdictional provisions applicable to cases under the former Bankruptcy Act, and in particular,
         the limits on jurisdiction under §§ 2a and 311 of the former Act).

[40]     *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed.
         2d 598 (1982).

even if between nondebtors.[41]  And Judge Lasker expressly held in *FNN*, quite properly,

that a bankruptcy court is legally competent to decide antitrust issues raised by

proceedings before it.[42]

In further support of its contention that there should be an unwritten exception to

section 362(a)(3), TAC argues that public policy mandates that antitrust claims be

litigated in the district courts (and, apparently, district courts of the plaintiff's

choosing).[43]  The Court disagrees.  This same argument was raised before with respect to

the arbitrability of antitrust claims, and the Supreme Court rejected it.[44]  The Supreme

Court held that "so long as the prospective litigant effectively may vindicate its statutory

cause of action in the arbitral forum, the statute will continue to serve both its remedial

and deterrent function."[45]  Those comments are no less true with respect to the

bankruptcy court.  A bankruptcy court is at least as subject to the rule of law as an

arbitration panel; its determinations are subject to appellate review by the district court,

Circuit Court, and Supreme Court; and it remains subject, in appropriate cases, to

motions to withdraw the reference under section 157(d).

Finally, the Court briefly addresses some matters that anyone might ask.  If TAC

had antitrust claims that deserved to be addressed, would section 362(a)(3) deprive it of a

remedy?  And what, in light of section 362(a)(3), should TAC have done?  The answers

are simple.  TAC would not be deprived of a place to litigate its claims (or to secure a fair

---

[41]     *See* the jurisdictional discussion in this Court's *TAC TRO Decision*, 2006 WL 1529357, at *6-7.

[42]     126 B.R. at 161.

[43]     *See* TAC Br. at 17 ("requiring such antitrust cases to be litigated in bankruptcy courts would do serious damage to antitrust enforcement and the strong public polices enunciated by the Supreme Court in the cited cases").

[44]     *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 628-29, 632, 105 S. Ct. 3346, 3355, 87 L. Ed. 2d 444 (1985).

[45]     *Id.* at 637.

adjudication of them), because it could still litigate them in the bankruptcy court, with appellate rights in the three courts above the bankruptcy court, and with the right to move for withdrawal of the reference.  And TAC is not the first litigant to have litigation it wished to proceed with barred by the automatic stay.  The Second Circuit, in an extensive opinion, has enunciated standards for relief from the stay, with particular applicability to the commencement or continuation of litigation in another forum.[46]  While, to be sure, TAC likely would not have prevailed on such a motion (and chose not to make it, despite this Court's willingness to consider it), that is merely a function of the Second Circuit's standards for such relief, and the prejudice to the estate that would result if the litigation proceeded elsewhere.

In short, if the defendants wanted to act appropriately in asserting their antitrust claims, they could have and should have (a) limited their prayers for relief to those that would not interfere with property of the estate; (b) raised them here; or (c) sought relief from the stay—any one of which they could have done without violation of section 362(a)(3).  They did none of those.  Adelphia's request for a declaration that section 362(a)(3) was violated is granted.

## II.

### Issuance of Injunction

Other than arguing that there should be an exception to section 362(a)(3) for private antitrust litigants (and that there thus is no basis for enjoining them), the defendants do not dispute Adelphia's entitlement to an injunction.  In fact, they do not even address the standards for issuance of an injunction, or the Court's ability to grant

---

[46]   *See Sonnax Indus., Inc. v. Tri Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990)

one, at all.[47]  But the Court believes that it should still cover that, and lay out the legal

predicates and bases for the exercise of its discretion in this regard.

Injunctions to enforce the automatic stay—in substance, to enforce a statutory

prohibition by a prohibitory injunction—have been routinely granted by bankruptcy

courts, and affirmed by higher courts,[48] most often under Bankruptcy Code section

105(a).  Injunctions have also been routinely entered to avoid interference with an

estate's reorganization,[49] as an interference with the closing of the Debtors' sale here

plainly would do.  The Court first discusses the standards for issuance of a permanent

injunction in federal courts, and then the particularly relevant law applicable to

addressing concerns like those faced here under Bankruptcy Code section 105(a).

## A.

The Supreme Court has recently spoken to the standards for issuance of a

permanent injunction in the federal courts.

> [A] plaintiff seeking a permanent injunction must
> satisfy a four-factor test before a court may grant
> such relief. A plaintiff must demonstrate: (1) that it
> has suffered an irreparable injury; (2) that remedies
> available at law, such as monetary damages, are
> inadequate to compensate for that injury; (3) that,
> considering the balance of hardships between the

---

[47]    They do argue, though, that if the Court issues an injunction, it should be narrower than the TRO,
a contention with which the Court agrees in part, and which is discussed in Section III below.

[48]    *See*, *e.g.*, *LTV Steel Co., Inc.  v. Board of Educ. (In re Chateaugay Corp.)*, 93 B.R. 26 (S.D.N.Y.
1988) (Leval, J., then a District Judge) ("*LTV*") (affirming bankruptcy court order enjoining
prosecution of action to recover taxes in the United States District Court for the Northern District
of Ohio); *Garrity v. Leffler (In re Neuman)*, 71 B.R. 567 (S.D.N.Y. 1987) (Sweet, J.) ("*Neuman*")
(affirming bankruptcy court order, holding, *inter alia*, that bankruptcy court had authority to issue
injunction against prosecution of state court action, where state court action was attempt to
directly interfere with bankruptcy trustee's authority to control nursing home).

[49]    *See In re Granite Partners, L.P.*, 194 B.R. 318, 337 (Bankr. S.D.N.Y. 1996) (citing *Manville
Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 64 (2d Cir. 1986);
*LTV*, 93 B.R. at 29; *Keene Corp. v. Actstar Ins. Co. (In re Keene Corp.)*, 162 B.R. 935, 944
(Bankr. S.D.N.Y. 1994)).

> plaintiff and defendant, a remedy in equity is
> warranted; and (4) that the public interest would not
> be disserved by a permanent injunction.[50]

Here the Court finds, as a mixed question of fact and law, that Adelphia plainly has shown irreparable injury, by reason of the threatened loss of the $17.6 billion it will receive on the sale of its business, and the threatened interference with Adelphia's reorganization—a concern that is especially severe in light of the upcoming July 31 deadline for a closing, after which Adelphia will be at risk of losing its deal. The irreparable injury is especially severe since the proposed sale involves a control premium which Adelphia was unable to obtain from anyone else. As is obvious, buyers who can pony up $17.6 billion for a company, individually or in the aggregate, are few and far between. Adelphia looked for others once, without success. There is no reasonable basis for a belief that they will surface now, especially if they no longer have Time Warner and Comcast to bid against. The infringement on this Court's jurisdiction constitutes irreparable harm as well.[51]

It has not been suggested that the resulting loss to Adelphia, of the pending sale or even from delay to it, could be compensated for by damages. TAC is a startup company, and the premise of its antitrust action is that wrongful acts by its targets prevented it from growing. It has not even bothered to argue that it could make the Adelphia estate good for the damage that its actions would cause, or that damages would otherwise be satisfactory.

---

[50] *eBay Inc. v. MercExchange, L.L.C.*, 126 S. Ct. 1837, 1838 (2006) (citations omitted).

[51] *See In re Johns-Manville Corp.*, 97 B.R. 174, 181 (Bankr. S.D.N.Y. 1989) (Lifland, C.J.) (finding irreparable harm to future asbestos claimants by the filing of litigation in other forums in violation of claims procedures set forth in the debtors' confirmed reorganization plan, thereby defeating the court's continuing jurisdiction to implement the plan).

Looking at the balance of hardships, the Court finds the balance extraordinarily one-sided. Even after complying with section 362(a)(3), TAC will not be foreclosed from asserting its claims. It will still be able to bring them here—and, if it presses only those claims that will not destroy Adelphia's reorganization, in Minnesota. By contrast, Adelphia and its thousands of creditors will be the victims and suffer grievous injury if TAC can hold their recoveries hostage to its desire to get Time Warner and Comcast to put it on the air.

Finally, the public interest would not be disserved by issuance of a permanent injunction. While the Court is unsure whether the public interest would be disserved even if TAC couldn't bring its claims anywhere, the Court does not have to decide that issue. The public interest would hardly be disserved by requiring TAC to proceed in the forum that has jurisdiction over the assets with which TAC wishes to interfere, especially since TAC will be free to assert all of its claims in this forum. The public interest is not particularly affected, one way or another, by private litigants' interests in forum shopping.

Nor would the public interest be disserved if TAC were limited to seeking damages, an order requiring Time Warner and Comcast to carry it, or a divestiture if it later were to win. If the proposed litigation is really about giving TAC relief (and not imposing leverage by threats of Doomsday consequences), that bundle of remedies would be more than sufficient.

## B.

Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.

Section 105(a) provides broad equitable power for a Bankruptcy Court to

maintain its own jurisdiction and to facilitate the reorganization process.  A bankruptcy

court may enjoin proceedings in other courts when it is satisfied that such a proceeding

would defeat or impair its jurisdiction with respect to a case before it.[52]  As the Second

Circuit has observed, section 105(a) powers may be exercised "where there is a basis for

concluding that rehabilitation, the very purpose for the bankruptcy proceedings, might be

undone by the other action."[53]  The Circuit has also observed that:

> [T]he Bankruptcy Court has authority under section
> 105 broader than the automatic stay provisions of
> section 362 and may use its equitable powers to
> assure the orderly conduct of the reorganization
> proceedings.[54]

Though it may not matter, since the standards for issuance of an injunction set

forth above have been satisfied, the Court notes that it has been repeatedly held in this

district that the usual grounds for injunctive relief, such as irreparable injury, need not be

shown in a proceeding for an injunction under section 105(a).[55]

The bankruptcy court's injunctive powers under section 105(a) include "the

power to enjoin the Defendants from proceeding against non-debtor third parties . . .

where, as here, the actions against such third parties have at least a conceivable effect

---

[52]   *LTV*, 93 B.R. at 29.  *See also Continental Illinois Nat'l Bank & Trust Co. v. Chicago*, *Rock Island & Pacific Ry. Co.*, 294 U.S. 648, 675, 55 S. Ct. 595, 606, 79 L. Ed. 1110 (1935) ("The power to issue an injunction when necessary to prevent the defeat or impairment of its jurisdiction is . . . inherent in a court of bankruptcy, as it is in a duly established court of equity."); *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co, Inc.)*, 788 F.2d 994, 1008 (4th Cir. 1986), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986).

[53]   *Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.)*, 801 F.2d 60, 64 (2d Cir. 1986).

[54]   *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985) (citations omitted).

[55]   *See LTV*, 93 B.R. at 29; *Neuman*, 71 B.R. at 571; *C & J Clark America, Inc. v. Carol Ruth, Inc. (In re Wingspread Corp.)*, 92 B.R. 87, 92 (Bankr. S.D.N.Y. 1988) (Brozman, J.).

-27-

upon the Debtors or implicate the interpretation or enforcement of this Court's orders."[56]

Here, of course, where TAC wishes to enjoin the very transaction that will provide the

underpinnings of the Debtors' reorganization, and provide the lion's share of creditor

recoveries, the effort to enjoin this sale will have much more than a "conceivable effect"

on the Debtors and this Court's orders.   The adverse effect on the Debtors'

reorganization could not be more pronounced, and this case is the poster child for

exercise of the Court's section 105(a) power.

C.

Thus, under the applicable factors, the necessary showing for a permanent

injunction has been made.  The Court will issue an injunction of the exact type that the

*FNN* bankruptcy court issued, and the *FNN* district court affirmed, although, as discussed

below, this Court will modify it somewhat, in a manner more accommodating to TAC.

III.

### Breadth of Injunction

For reasons discussed above, this Court will continue its earlier restraint of further

violations of section 362(a)(3).  However, when it issued the TRO, this Court said that it

would consider whether it could "address the very substantial needs and concerns of the

Debtors and their creditors by a somewhat narrower injunction, which might permit

conduct that would not, like TAC's present conduct, interfere with the property of the

estate and the reorganization proceedings before me."[57]

---

[56]      *LTV Corp. v. Back* (*In re Chateaugay Corp.*), 201 B.R. 48, 66 (Bankr. S.D.N.Y. 1996) (Lifland, J.) (citations omitted).

[57]      *TAC TRO Decision*, 2006 WL 1529357, at *1.

Of course that would not be an issue if TAC prosecuted its claims in this Court. In that event, TAC could assert the full spectrum of the claims it might wish to raise.[58] But assuming that TAC feels that its interests are better served by litigating elsewhere, the Court will permit that, in material part. It will give TAC the fullest leeway the Court could grant to press any legitimate concerns TAC might have, if they could be prosecuted without the grievous damage to the estate that TAC's presently proposed conduct would cause.

The Court believes that if TAC wishes to secure an order requiring Time Warner or Comcast to carry The America Channel on their cable properties, which the Court understands to be the main grievance TAC asserts (though TAC seeks relief of much more destructive effect, at least seemingly to assert leverage to achieve that end), TAC can seek such an order without material prejudice to Adelphia's reorganization, and the Court will permit a claim for relief of that character to proceed. The same could be said with respect to any TAC claims for damages, and this Court will permit claims for damages to proceed too. And the Court will even permit TAC to seek divestiture, after Adelphia has successfully realized on the value of its assets.

But the Court rejects TAC's suggestion that TAC should be free to enjoin Time Warner and Comcast from proceeding under agreements they entered into with each other as part of the sale transaction under which Adelphia will dispose of its assets, so long as TAC does not try to enjoin the closing of the sale itself. That would merely accomplish indirectly what TAC cannot do directly, and would simply be a variant of the tactic TAC first used, when it brought an action that would impose grievous harm upon

---

[58]   This Court would also be uniquely qualified to evaluate certain of TAC's claims, such as its assertion that alleged bid rigging by Time Warner and Comcast in the proceedings before this Court was wrongful.

Adelphia without naming it as a party.  As noted in *MCEG*, section 362(a)(3) protects

against acts to exercise control over property of the estate "without distinction as to the

form such interference takes."[59]

Conclusion

There is nothing in the law—in the Bankruptcy Code, in the remainder of the

United States Code, or by some kind of unwritten exception—that exempts litigants in

private antitrust actions from the provisions of section 362(a)(3) of the Bankruptcy Code.

The defendants' efforts to enjoin the sale of the assets of the Adelphia estate that is the

underpinning of its reorganization cannot continue.  Adelphia's request for a declaratory

judgment holding that section 362(a)(3) was violated is granted, and a permanent

injunction restraining further violations of section 362(a)(3) will be granted.  A judgment

and injunction in accordance with this determination are being entered concurrently with

this decision.

Dated:  New York, New York                         *s/Robert E. Gerber*
            June **26**, 2006                              United States Bankruptcy Judge

---

[59]        133 B.R. at 235.